UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAPLETON AT COUNTRYSIDE CONDOMINIUM ASSOCIATION, INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 1:18-cv-03574-TWP-TAB |
| TRAVELERS INDEMNITY COMPANY, ) ) | |
| Defendant. ) | |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Travelers Indemnity Company's ("Travelers") Motion for Summary Judgment. (Filing No. 58.) Plaintiff Mapleton at Countryside Condominium Association, Inc., ("Mapleton"), initiated this action alleging breach of contract and bad faith after Travelers refused to cover the damage inflicted on Mapleton's property by hailstorms in 2016 and 2017. (Filing No. 18.) Travelers seeks summary judgment on those claims, arguing that Mapleton failed to comply with the notice requirements in the insurance policies and that the evidence in the record does not show that Mapleton's property sustained damage during the coverage period. For the following reasons, Travelers' Motion for Summary Judgment is **granted**.

## I.   BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Mapleton as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Travelers issued condominium insurance policies to Mapleton from December 1, 2015 to December 1, 2016, and December 1, 2016 to December 1, 2017. (Filing No. 60-1; Filing No. 60-

2.) These policies insured 31 buildings located at or around 16904 Mapleton Place, Westfield, Indiana against risks of direct physical loss or damage during the policy periods. (Filing No. 60-1.)

### A.     Pre-Travelers Coverage

Before it was insured by Travelers, Mapleton was insured by Erie Insurance. (Filing No. 18 at 3.) While it was covered by Erie, Mapleton submitted a claim in 2013 for damage to its roof, which resulted in Erie preparing an estimate of the cost of replacement of certain metal vents on the roofs of Mapleton condominiums. (Filing No. 18-5.) Ultimately, some vents were replaced but others were not. (Filing No. 60-4 at 61.) Replacing these vents sometimes damaged the shingles on the roofs, which necessitated replacement of the entire roof. *Id.* at 116.

### B.     Travelers Policies

The Travelers policies stated that Travelers "will pay for direct physical loss of or damage to" Mapleton's property subject to certain conditions. (Filing No. 60-1 at 12.) One such condition was that the loss or damage was sustained during the period of the policy, that is, Travelers only covered damage sustained between December 1, 2015 and December 1, 2017. *Id.* at 44. The policies did not cover damage caused by wear and tear or by faulty or defective design, repair, or maintenance. *Id.* at 35-37. The policies also assigned certain duties to Mapleton in the event it wanted to make a claim. They required Mapleton to give "prompt notice of the loss or damage" and "[a]s soon as possible, give…a description of how, when and where the loss or damage occurred." *Id.* at 38-39.

### C.     Mapleton's First Claim

This case involves two claims Mapleton made for two separate events. Mapleton contends that the first of these events—a hail and windstorm—occurred on June 22, 2016 (the "June

2

Storm"). (Filing No. 60-14 at 10.) Travelers has designated evidence indicating that no storm occurred on that date. Some evidence in the record indicates the storm did take place on or around that date. The first Travelers' adjuster involved with the claim documented that 3/4-inch hail came through that area of town on June 23, 2016. (Filing No. 69-14 at 10.) A Hail History Report prepared by a company called Benchmark corroborates both the date of the storm and the size of the hail as reported by the adjuster. (Filing No. 69-3.) And a report prepared by Genesis Weather Solutions, LLC states that on June 23, 2016, winds in gusted up to 67 miles per hour.[1] (Filing No. 60-12 at 4.)

Around the time of the storm, Mapleton's management looked into filing a claim but were told by Travelers' representative that it would be a waste of time. (Filing No. 60-11 at 28.) Five months later, in November of 2016, Mike Caskey ("Caskey"), Mapleton's property manager, engaged a contractor, Trent Kelso ("Kelso") of Whitetail Construction ("Whitetail"), to look into replacing the roofs of some of the condominiums. During his inspection of the roofs, Kelso found storm damage and told Caskey he thought Mapleton could make a successful insurance claim based on that damage. (Filing No. 60-7 at 87.) Following his discussion with Kelso, Caskey spoke to Mapleton's management about filing a claim on its policy with Travelers. (Filing No. 60-11 at 61.) Mapleton ultimately filed the claim on January 10, 2017, nearly seven months after the storm the claim was based on. (Filing No. 60-5 at 16-17.) Between the June Storm and the time Mapleton filed its claim in January, Whitetail made repairs on Mapleton's condominiums. (Filing No. 60-9.)

---

[1] Whether there was a storm in Indianapolis, Indiana on June 22 or 23, 2016, is a disputed question of fact. There is other evidence in the record that indicates no storm took place. But on Travelers' Motion for Summary Judgment, the Court accepts the version of the facts most favorable to Mapleton, the non-movant.

The initial adjuster Travelers assigned to handle Mapleton's claim was Shannon Simms ("Simms"). On February 6, 2017, Simms inspected the property and found that the storm had damaged a fence and estimated the cost of repair at $17,266.50. ([Filing No. 69-14 at 6](), 13.) Simms also found that wind had damaged some of the shingles on the roofs of the condominiums and that there was hail damage to gutters, downspouts, and air conditioning units. ([Filing No. 69-15 at 13-14]().) She estimated that the total cost of repair could be in the area of $417,243.38, assuming that one half of each roof would need to be replaced. *Id.* Following that estimate, Travelers transferred that case to its major case unit and brought on a new adjuster, Marvin Carr ("Carr"). *Id.* at 13.

On February 14, 2017, Carr sent a letter to Mapleton noting Travelers' ongoing research into whether coverage for the storm was provided by the policy and requesting Mapleton's compliance with the conditions of the policy. ([Filing No. 69-17]().) The next day, Carr spoke with a representative from Erie Insurance about Mapleton's 2013 claim and learned the amount Erie paid for repairs and that it had received a certificate of completion indicating the repairs had been made. (Filing No. 68-15 at 11.) Carr inspected the Mapleton condominiums himself on February 22 and 23. *Id.* at 10.

Following his inspection, Carr determined that the damages Mapleton sustained in the June Storm totaled just under $80,000.00. ([Filing No. 69-18 at 1](), 32.) Carr also engaged an engineer to inspect the property. ([Filing No. 69-15 at 9]().) He then set a reserve of $350,000.00. ([Filing No. 69-13 at 40]().) However, on March 22, 2017, he informed Mapleton that the loss "only exceeds the deductible for four locations." ([Filing No. 69-19]().) Travelers was unable to confirm a single wind and hail event on June 22, 2016. *Id.*

On April 6, 2017, Carr reaffirmed that "[t]he Replacement Claim will be paid as per the terms and conditions of the policy." ([Filing No. 69-20]().) On December 4, 2017, Mapleton

4

submitted a proof of loss totaling $1,025,581.00 for wind and hail "damages to roofs, siding, gutters, soft metals, etc." (Filing No. 69-24.) That number was derived from Whitetail's estimate for repair and replacement. (Filing No. 69-25.) Mapleton later entered into a contract with Whitetail to have the roofs, gutters, and downspouts replaced for the price of $1,410,082.19. (Filing No. 60-7 at 34-35.) Mapleton later received an estimate to replace the siding on condominiums in the amount of $2,583,142.72. (Filing No. 69-26.) Travelers estimated the Mapleton's damages at $83,622.07. (Filing No. 69-27 at 69.) Accounting for the deductible, Travelers determined Mapleton was entitled to $14,066.94 under the policy. *Id.* at 37, 39, 40, 41. On October 12, 2018, Travelers informed Mapleton that it could not verify that the damage occurred during the coverage period and thus Mapleton was not entitled to any proceeds for the June Storm. (Filing No. 69-8; Filing No. 69-10.)

**D.     Mapleton's Second Claim**

The second claim at issue in this action is based on a hail and windstorm that occurred on April 26, 2017 (the "April Storm"). Travelers does not dispute that this storm took place, rather, it disputes whether any of the condominiums sustained damage from this storm.[2] There is evidence in the record showing that the condominiums sustained hail damage in the April Storm. Whitetail, Mapleton's contractor, identified hail damage throughout the complex that was worse after the April Storm. (Filing No. 69-13 at 25.) Travelers' experts also found evidence of hail damage that had not been found before the April Storm, although they did not believe that damage occurred during the April Storm. (Filing No. 69-29.)

Mapleton did not file a claim based on the April Storm until March 22, 2018—nearly eleven months after the storm. (Filing No. 60-11 at 21-23.) Mapleton believed that the damage it

---

[2] For purposes of resolving this Motion, the Court assumes the April Storm occurred because it is supported by evidence in the record. (Filing No. 60-18.)

sustained in the April Storm required replacement of all of the siding on the condominiums and obtained an estimate for the cost of that work—$2,583,142.72. (Filing No. 69-26.) Travelers determined that Mapleton did not sustain any damage during the April Storm and therefore denied Mapleton's second claim. (Filing No. 69-10 at 2.)

Mapleton filed a complaint in Hamilton County Superior Court alleging breach of contract and bad faith and on November 16, 2018, Travelers removed that complaint to this Court. (Filing No. 1.) Travelers moved for summary judgment on May 1, 2020. (Filing No. 58.)

## II.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Liberty Lobby*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts do not preclude summary judgment. *Id.* A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan*

*Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

## III.  DISCUSSION

Mapleton brings two claims: breach of contract and bad faith. (Filing No. 18.) Travelers makes three arguments in support of its summary judgment motion. (Filing No. 58.) First, it argues that Mapleton's notice of both claims was inexcusably late, and thus recovery is barred under Indiana law. (Filing No. 61 at 16.) Second, Travelers contends that Mapleton cannot prove roof and siding replacement is required based on damaged sustained during the coverage period. *Id.* at 19. And last, Travelers argues the designated evidence does not support Mapleton's bad faith claim. *Id.* at 29. The Court will address each argument in turn.

The policies required Mapleton, in the event of loss or damage, to "[g]ive [Travelers] prompt notice of the loss or damage" and "give [Travelers] a description of how, when and where the loss or damage occurred." (Filing No. 60-1 at 38-39.) The facts are undisputed that Mapleton did not file its first claim until more than six months after the June Storm, and did not file its second claim until roughly eleven months after the April Storm. Travelers argues that these delayed filings constitute late notice and Mapleton cannot recover on those claims. Mapleton responds that its notice was not unreasonably late and that even if it had been, Travelers did not suffer any prejudice

7

from the late notice. (Filing No. 68 at 27.) It also argues that Travelers has waived its late-notice defense for the first claim because Travelers' first adjuster confirmed the loss. *Id.* at 31.

"Requiring prompt notice allows insurers the opportunity to investigate the circumstances surrounding claimed losses in a timely and adequate manner." *Sheehan Const. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010) (citing *P.R. Mallory & Co. v. Am. Cas. Co. of Reading, Pa.*, 920 N.E.2d 736, 746 (Ind. Ct. App. 2010), *trans. denied*.) Indiana Courts view notice as a crucial component of an insurance claim, and consequently have created a rebuttable legal presumption that an insurer is prejudiced by failure to comply with a notice requirement.

> In *Miller v. Dilts*, [the Indiana Supreme Court] determined that "[p]rejudice to the insurance company's ability to prepare an adequate defense can therefore be *presumed* by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit." 463 N.E.2d 257, 265 (Ind. 1984) [emphasis added in *Sheehan*]. Once prejudice is presumed, the burden is on the insured to "establish some evidence that prejudice did not occur in the particular situation." *Id.*; *see also Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 279 (Ind. Ct. App. 1999) ("The presumption of prejudice essentially means that if the delay in giving the required notice is unreasonable, the injured party or the insured has the burden to produce evidence that the prejudice did not actually occur in the particular situation."). The duty to notify is a condition precedent to the insurance company's liability to its insured. *Miller*, 463 N.E.2d at 263. "Where prejudice is created by the insured's noncompliance with the policy's provisions, the insurance company is relieved of its liability under the policy." *Id.* at 261.

*Sheehan* at 689.

The Court must determine whether the evidence in the record shows clearly that Mapleton did not comply with the notice requirement of the policies—only if it determines that the undisputed evidence shows Mapleton failed to comply does the Court need to address the issue of prejudice. The parties have followed the lead of Indiana courts which have interpreted the phrase "as soon as practicable" and similar phrases such as "prompt notice" to require "reasonable notice." (Filing No. 61 at 17 ("Indiana courts have interpreted the phrase 'as soon as practicable' and similar phrases to require 'reasonable notice.'"); Filing No. 68 at 27-28 (framing Mapleton's notice on each

8

claim as "not unreasonably late").) Under Indiana law, when the facts are undisputed, what constitutes reasonable notice is a question of law for the court to decide. *P.R. Mallory* at 749. The Court will consider each claim separately.

### A.    Claim Following the June Storm

#### 1.    Waiver

Mapleton argues that Travelers has waived its late-notice defense by failing to advise Mapleton "of any issue with late reporting until two months after [the January 10 claim was filed]." ([Filing No. 68 at 31](#).) In support of this contention, Mapleton cites *dicta* from *Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 991 (Ind. 1997). *Huff* found that there was sufficient evidence for a jury to conclude that the insurer had waived his late-notice defense because "[o]ne could reasonably conclude that verified proofs of loss were not being insisted upon and that resort to legal proceedings would not be necessary to collect on the claim." *Id.* at 992. The insured had given notice to the insurer's agent within a month of the loss. *Id.* After more than a year of haggling, the insurer denied the claim and indicated it advised the insured that she had not complied with the policy's notice provision. The *Huff* court determined that allowing the insurer to rely on a late-notice defense in such circumstances "would be to allow an insurer to lull an insured into not pressing his rights and then to deny liability on the basis of the limitation." *Id.*

Mapleton argues that Simms, Travelers' first adjuster, did not require a proof of loss and that "Travelers did not advise of any issue with late reporting until over two months after it was reported." ([Filing No. 68 at 31](#).) One crucial fact was present in *Huff* that is not present in this case. In *Huff*, the court found after the insured reported the loss, the insurer was in communication with the insured for over a year before denying the claim—duping the insured into a belief that the insurer did not expect strict compliance with the notice provision. Here, Travelers admits that

9

notice was given on January 10, 2017, when Mapleton first reported the damage from the June Storm.³ At no time before the notice was given did Travelers indicate it did not expect Mapleton to comply with the notice provision of the policies. In other words, Mapleton did not fail to give notice because Travelers misled it into believing notice would not be required. Travelers' minimal delay in asserting failure to give notice following Mapleton's filing of the claim did not affect the notice period.

*Huff* is distinguishable from this case because in *Huff* the insurer misled the policy holder, making her think she did not need to comply with the policy's notice provision. No evidence in the record here indicates Mapleton delayed reporting based on any assurances or misrepresentations from Travelers. Here, Travelers has not waived its notice defense.

### 2. Notice

The parties disagree about when Mapleton gave notice of its first claim following the June Storm. Travelers focuses on the date Mapleton actually filed its claim—more than six months after the June Storm. (Filing No. 61 at 18.) But Mapleton, citing Caskey's deposition, argues that notice was given before the fall of 2016, when Mapleton "tried to file an insurance claim, and [it was] told by [its] agent that it was a waste of time." (Filing No. 60-11 at 28.) Travelers argues this evidence is inadmissible hearsay, and that it would be unreasonable for Mapleton to follow the advice of its agent not to file a claim following the damage done by the storm. (Filing No. 77 at 3.) It also contends Mapleton's argument is undermined by the fact that Caskey could not confirm in his deposition that a Travelers' agent discouraged Mapleton from filing a claim before the June Storm. *Id.*

---

³ The Court addresses Mapleton's claim that it provided notice earlier than that date in Section III.A.2 of this Order.

10

The Court disagrees with Travelers that the portion of Caskey's deposition in which he discusses communications between a Mapleton representative and Travelers' agent is inadmissible hearsay. To begin with, Caskey did not recount any actual statements. He merely asserted that Mapleton "tried to file a claim" and that the agent "was advising them not to do it." ([Filing No. 60-11 at 28](#).) Additionally, even if this general description of a conversation could be said to constitute a statement, that statement is not being offered for the truth of the matter asserted. *See* Federal Rule of Evidence 801(c)(2). Mapleton offers Caskey's retelling of the conversation for the effect it would have on the listener—it would have informed Travelers' agent that Mapleton intended to file a claim.

Concerning Travelers' contention that it would have been unreasonable for Mapleton to follow the advice of its agent not to file a claim, while that contention may be true, it is irrelevant. The importance of the conversation recounted by Caskey is that it was meant to inform Travelers that Mapleton's condominiums sustained damage in the June Storm. If Mapleton did indeed inform Travelers of that damage, Travelers' response and Mapleton's subsequent behavior is irrelevant to the issue of whether Mapleton complied with the notice requirement.

However, the Court finds there is no disputed issue of fact on this issue for another reason. The evidence Mapleton relies on—the portion of Caskey's deposition in which he recounts a communication between a Mapleton representative and Travelers' agent—is simply not sufficient to allow a reasonable juror to determine that Mapleton gave notice of its intent to file a claim. Caskey gave these responses when discussing this conversation:

> **Q And what prompted that contact?**
>
> A Well, we took over management of Mapleton in late summer, early fall of '16…. But roughly early fall of '16 is when we took over.
>
> [The previous management] had looked into replacing their roofs. They tried to file an insurance claim, and they were told by their agent that it was a waste of

11

time. Again, I shouldn't put words in the insurance agent's mouth, but basically don't do it. You're not going to get anywhere with this. And he was advising them not to do it, so the board didn't do it.

\*\*\*

**Q The first thing I'm interested in is you said that the board of the association had looked into replacing the roofs sometime prior to your involvement with the board.**

A Yes.

**Q All right. Do you know how far back that goes?**

A No, I don't know.

**Q How did you know that they have previously looked into replacing the roofs prior to your involvement with the condominium association?**

A They told me when we took over that one of the things that would be on my list is to look at replacing roofs.

**Q Okay. And did they explain why they wanted to replace the roofs?**

A Yeah. Because there was damage from wind and hail that the insurance agent wouldn't allow them to place a claim. Now, I know that sounds harsh and unrealistic, but that was their mind-set on the thing.

**Q So you were told that their insurance agent, sounds like probably the better word is discouraged them from making a claim.**

A That's a fair word.

**Q When did all that take place?**

A I don't know. It was before my time.

**Q There would be records, though, wouldn't there, between the board and the agent of this discussion, I would assume; right?**

A I wouldn't assume that. A lot of times it happens over phone calls.

**Q Who is is (sic) the insurance agent that you're referring to?**

A Travis Round.

**Q So sometime—I mean, it could have been 2014, 2015; it could have been quite a while ago.**

12

A I don't think so.

**Q All right. Give me some time frame then as to when you think that happened.**

A Well, I don't know. But the reason I say I don't think it would be that far is because I don't think Travelers was agent of record—not agent—insurance company of record back in '14 or '15. I don't know that for a fact. Just something in the back of my mind says that from dealing with Marvin Carr. I think he might have said that to me. I'm not sure though.

**Q Is Travis Round still the agent of record?**

A Yes.

**Q So what weather event was it that gave rise to this hail and wind damage that the agent discouraged the association from claiming?**

A I don't know. I wasn't around then.

**Q Was it this June 22, 2016, event? Did this all happen between June 22, 2016, and the time that you were retained, this discussion between agent and client?**

A I don't know. I really don't know when that happened.

**Q Who was it from the board who told you that Travis Round discouraged them from making an insurance claim?**

A Oh, I don't know.

**Q There was just the board?**

A Well, you know, I meet with different board members for different reasons. You know—maybe you don't know. I mean, boards—my client would say, Hey, when you're up in the area, you know, I want to talk to you about this, that or the other or whatever. So I don't know. It would be hard to pinpoint who.

**Q Would you expect there to be a board meeting if there was weather damage? If they were trying to make an insurance claim, that's the type of thing you would expect to find in the board minutes, wouldn't you?**

A I don't know. I don't know if it was discussed at a board meeting. I have no idea.

(Filing No. 60-11 at 28-33.)

As Travelers points out, Caskey is unable to date the conversation or even confirm that it followed, rather than preceded, the June Storm. In addition, Caskey is unable to identify the

13

Mapleton board member who participated in the conversation or the board member who relayed the conversation to him. The contents of this conversation and whether the conversation occurred at all are dubious based on this evidence. Moreover, assuming the evidence gives rise to an inference that the conversation did occur, Caskey's deposition testimony does not establish that it gave Travelers notice that Mapleton's condominiums sustained damage in the June Storm. Caskey says that Mapleton "tried to file a claim" at some uncertain time based on some uncertain weather event. Mapleton's attempt to file a claim, based on Caskey's testimony, seems to have consisted of a single conversation between an unidentified Mapleton board member and Travelers' agent. Based on Caskey's testimony, it appears the agent convinced the board member not to file a claim—meaning the mutual understanding of both parties at the end of the conversation was that Mapleton would not file a claim. No other evidence in the record details this conversation or even confirms it took place. There is no serious dispute of fact about this conversation, and, as Caskey does not even opine that the June Storm was mentioned, no reasonable juror could determine that the conversation put Travelers on notice that Mapleton sustained damage in the June Storm.

The evidence in the record shows that the claim was revealed to Travelers on January 10, 2017, the day Mapleton filed its claim. ([Filing No. 60-5 at 17](#).) The record is frustratingly void of evidence of how and when Mapleton submitted that claim. In other words, the only way to know that Mapleton notified Travelers of the claim is from the claim notes; there is no written record of a letter or email notifying Travelers of an incoming claim. It appears both parties are satisfied that the filing of the claim would have given Travelers notice of the damage or loss Mapleton had sustained. Accordingly, the Court finds that a reasonable juror could find that Mapleton first notified Travelers of the damage it suffered in the June Storm on January 10, 2017 at the earliest. Whether that notice qualifies as reasonable under the policies is a question of law.

14

The Court finds that notice was neither reasonable nor prompt. There is no bright line rule in Indiana as to what constitutes a reasonable delay in notifying an insurer of loss or damage. But at least one Indiana court has found that a six-month delay in notifying an insurer of a loss does not satisfy a notice clause. *Askren Hub*, 721 N.E.2d at 278-79 (concluding the insured's delay of six months before notifying the insurer of the occurrence constituted unreasonable notice). Mapleton cites no cases in which an Indiana court found that a six-month delay satisfied an insurance policy's notice clause, and the Court did not find any. Thus, the Court concludes as a matter of law that Mapleton did not give adequate notice under the policies.[4]

### 3. **Prejudice**

Having determined Mapleton's notice of its damage from the June Storm was unreasonably late, the Court must determine whether that unreasonable delay prejudiced Travelers. Indiana law presumes prejudice, and the burden is on Mapleton to designate evidence showing no prejudice occurred. If Mapleton designates that evidence, the issue becomes one for the trier of fact to determine at trial. *Miller v. Dilts*, 463 N.E.2d at 265-66.

Mapleton relies on *Erie Ins. Exchange v. Stephenson*, 674 N.E.2d 607 (Ind. Ct. App. 1996). In that case, Stephenson, an individual covered by an Erie homeowner's insurance policy, injured a houseguest with a bottle rocket. Four years after the accident the victim sued Stephenson, who then attempted to recover from Erie. That attempt, four years after the accident occurred, was the first time Erie learned of the accident. The Court of Appeals of Indiana overturned summary judgment, finding that questions of fact existed as to whether Erie was prejudiced by Stephenson's failure to give notice. Among the evidence Stephenson presented that Erie was not prejudiced by the delay were witnesses to the accident, who were still available to testify and the fact that "there

---

[4] Mapleton's brief provides several excuses for giving late notice, but it does not develop a cogent legal argument that these circumstances affect its compliance with the notice requirement.

15

is nothing to suggest that the passage of time would have affected the physical features of the accident scene." *Id.* at 612. Moreover, Erie did not challenge the underlying basis of the claim, that Stephenson had fired a bottle rocket that injured his friend. *Id.* ("Further, the basic fact that Stephenson fired a bottle rocket that struck Huser in the eye is not in dispute.")

Following the blueprint laid out in *Stephenson*, Mapleton argues that "the property after both storms was sufficiently preserved for inspection by Travelers" and that "the witnesses in Mapleton are still available to testify." (Filing No. 68 at 30.) Thus, Mapleton argues, "there is no actual prejudice to Travelers because it was able to investigate and deny the claim on the merits." *Id.*

Travelers responds that Mapleton "ignores that Travelers was required to conduct lengthy and expensive investigations and is now defending a lawsuit over, among other things, when the alleged storm damage occurred". (Filing No. 77 at 5.) Travelers also argues that it was unable to adequately inspect the property for damage caused by the June Storm because Mapleton engaged a contractor to make repairs in November 2016, after the June Storm but before it filed its claim. (Filing No. 60-9.)

The Court agrees with Travelers that Mapleton has not designated evidence that rebuts the presumption of prejudice. The designated evidence shows that Travelers was in fact prejudiced by Mapleton's failure to give prompt notice. Contrary to Mapleton's assertion that "the property after both storms was sufficiently preserved for inspection by Travelers," the seven-month period between the June Storm and Travelers' first inspection of the property on February 6, 2016 made it difficult to determine what damage, if any, the June 2016 storm caused. That seven-month gap exposed the property to wear and tear and potential damage from other weather events. But more importantly, Mapleton's contractor completed repairs on the property in November 2016, after the

16

June Storm but before Travelers inspected the property. Preservation of the property is crucial in this case because the damage was to the property itself, not to a person as was the case in *Stephenson.*

Mapleton points out that all relevant witnesses are still available to testify at trial, but that fact does not rebut the presumption of prejudice. Mapleton's reporting delay prejudiced Travelers in conducting an adequate investigation. Even if every relevant witness testified with a crystal-clear memory of the damage caused by the June Storm, it would not alleviate the prejudice Travelers suffered by not being able to conduct its own prompt investigation. *See Askren Hub*, 721 N.E.2d at 279-80.

Lastly, Mapleton asserts that "Travelers was able to review and investigate both claims to the fullest extent, and ultimately denied the claim for lack of covered damage, not delayed reporting. Accordingly, there is no actual prejudice to Travelers because it was able to investigate and deny the claim on the merits." ([Filing No. 68 at 30](#).) This assertion is incorrect both as a factual matter and as a legal conclusion. The evidence in the record shows that Travelers was not able to investigate the June Storm claim "to the fullest extent". In fact, it had to wait more than six months to inspect the property, at which point the property had been exposed to other weather events and repairs. Irrespective of that misstatement, Mapleton's legal conclusion is erroneous. The Indiana Supreme Court has said that denial of a claim on grounds other than late notice does not, as a matter of law, rebut the presumption of prejudice. *Tri-Etch, Inc. v. Cincinnati Ins Co.*, 909 N.E.2d 997, 1005 (Ind. 2009) ("We do not agree that an insurer's denial of coverage on other grounds as a matter of law rebuts the presumption of prejudice from late notice…") *see also Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1275 (Ind. Ct. App. 2009). The Court is not persuaded by Mapleton's argument.

17

In conclusion, the Court finds that Travelers has not waived its late-notice defense, that no reasonable juror could find that Mapleton gave prompt or reasonable notice in this case based on the evidence in the record, and Mapleton did not designate evidence that rebuts the presumption of prejudice in claims where late notice is given. Because "[t]he duty to notify is a condition precedent to the insurance company's liability to its insured" under Indiana law, these findings are fatal to Mapleton's breach of contract and bad faith claims with respect to its first claim arising from the June Storm. *Sheehan*, 938 N.E.2d at 689.

### B. Claim Following the April Storm

Travelers asserts the same late-notice defense for Mapleton's second claim. Mapleton does not assert that Travelers waived this defense as to the second claim. Nor does Mapleton dispute the fact that it first gave notice of the second claim during an Examination Under Oath on March 22, 2018—nearly eleven months after the April Storm occurred.

Mapleton argues that "[a] reasonable jury could find the April storm notice was not unreasonably late." ([Filing No. 68 at 28](#).) It contends that "a reasonable juror could find that Mapleton, having already been discouraged from reporting the prior claim from its agent, coupled with its pending claim for similar damage could reasonably wait." Mapleton does not explain why prior claims would justify waiting to give notice of damage under the policy. Nor does Mapleton cite any law to support its argument. Following the same Indiana law cited in the previous section, a delay of eleven months is unreasonable. *Askren Hub*, 721 N.E.2d 279-80.

Mapleton makes no independent argument on the matter of prejudice related to the April Storm claim. Its brief contains one section addressing prejudice which discusses both claims. Having declined to accept that argument in the previous section, the Court rejects it here for the same reasons stated above. The Court finds as a matter of law that Mapleton's notice in relation

to its April Storm claim was unreasonable and that Mapleton did not designate evidence to rebut the presumption of prejudice. Those findings are fatal to its claims for breach of contract and bad faith. Thus, summary judgment in Travelers' favor is warranted regarding the April Storm.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Travelers' Motion for Summary Judgment (Filing No. 58) as to Mapleton's claims for breach of contract and bad faith. This ruling resolves all claims in this matter as to all parties. The Court will issue final judgment in a separate entry.

**SO ORDERED.**

Date: 8/3/2020

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT PC
bbeyers@bbinlaw.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Michael Robert Giordano
LEWIS WAGNER LLP
mgiordano@lewiswagner.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com